238 So.2d 900

**Delbert GAUTNEY**

v.

**STATE.**

1 Div. 54.

Court of Criminal Appeals of Alabama.

Aug. 25, 1970.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

Barry Hess, Mobile, for appellant.

PRICE, Presiding Judge.

The appellant, Delbert Gautney, was indicted for the offense of murder in the first degree. He was convicted of murder in the second degree. Punishment was fixed at imprisonment for life.

The State's evidence tends to show that deceased, Larry Jumper, and his brother Jimmy were at the Fiesta Lounge in Mobile, Alabama, around five o'clock, December 11, 1968. They were joined by defendant and Johnny Rice and the four went to

Lucky's Lounge. At Lucky's defendant and Jimmy Jumper got into an argument over forty dollars Jumper owed defendant. Rice took up the argument and he and Jumper went outside and had a fight. After that Jimmy and deceased returned to the Fiesta Club. About fifteen or twenty minutes later Rice and Gautney appeared with a shotgun and a rifle. They proceeded to beat Jimmy Jumper with the shotgun and rifle. Jimmy Jumper testified that during the beating he heard firing, that sounded like guns and he saw his brother was shot and was on the floor beside their table. He did not know who fired the first shot. The witness stated he had a 357 Magnum pistol in the Fiesta earlier in the evening, but he gave it to his brother who might have pointed it at defendant at Lucky's. Defendant and Rice asked about the pistol when they came into the Fiesta with the guns.

Doris Burns, the operator of the Fiesta Lounge, was present when Gautney and Rice began beating Jimmy Jumper. While the beating was going on Gautney looked over to where Larry Jumper was sitting, with his hand on a pistol on the table. Gautney fired and deceased picked up his gun and started shooting. Gautney fired the first shot, which struck deceased in the head.

Faye Orso, an employee of the Fiesta Lounge, testified Larry and Jimmy Jumper were sitting at a table with a girl when Gautney and Rice came in holding the guns in the air. Gautney had a rifle and Rice had a shotgun. Jimmy jumped up from the table and defendant and Rice began beating him with the guns. Gautney fired the first shot, hitting Larry in the head. After this Gautney and deceased began firing back and forth at one another.

When he arrived at the Lounge, Officer Glenn DeMouy found two men on the floor. Larry Jumper had been shot in the head and Delbert Gautney had been shot in the stomach. He also found an empty .22 rifle, a single barrel 12 gauge shotgun and a 357 Magnum pistol. The Magnum was loaded with six spent shells. About twenty-two empty shells from the .22 rifle were picked up off the floor.

On cross examination the officer testified he had been a policeman for seventeen years. He was familiar with .357 Magnum revolvers and had carried one in his work for seven years. He stated he did not know how much power is carried in a .22 caliber bullet but he would say it would be much less power than is carried in a .357 Magnum bullet.

Dr. Earl Wert testified he is a physician and coroner for Mobile County. He examined the body of Larry Jumper and found multiple gunshot wounds involving the head, the right shoulder, left arm and chest, with penetration of the brain, heart and lungs. The cause of death was established as massive hemorrhage in the chest cavity caused by gunshot wound.

Delbert Gautney, the defendant, testified he and Rice had been on a hunting trip and had been drinking heavily all day. Upon returning from the trip they went to the Fiesta Lounge where they met the Jumper brothers and had a few more drinks. They went to Lucky's Lounge and an argument started over a forty dollar debt Jimmy Jumper owed Gautney. A fight between Rice and Jimmy Jumper occurred outside Lucky's Lounge. As they were coming back inside defendant met them at the door. Rice was bleeding on his arm and face. Defendant asked Jimmy to go back outside with him. Jimmy pulled a pistol from his belt and placed it against defendant's head and threatened him. The Jumpers then left Lucky's Lounge.

Gautney and Rice armed themselves with the shotgun and rifle and went looking for the Jumpers to take the pistol away from them. They found them at the Fiesta Lounge. Gautney ordered Jimmy to get up from the table and give him the pistol. Jimmy got up, came toward defendant pulling up his shirt, and said he didn't have a pistol. Defendant pushed him back against the pool table with his gun barrel and

asked what became of the pistol. Thereupon Rice began hitting Jimmy with his gun. During the fight Gautney saw Larry Jumper at the table with a pistol in his hand and asked him to put it down. Larry Jumper fired the pistol, the bullet hitting defendant, and he returned the fire. Defendant did not remember anything after the first rifle shot.

On cross examination defendant admitted he had a .22 caliber pistol in his pocket when he and Rice went into the Fiesta carrying the shotgun and rifle.

Under the evidence adduced the defendant was not entitled to have granted his motion to exclude the state's evidence, nor his request for the affirmative charge.

■ Counsel for defendant argues in brief that the trial court committed reversible error in admitting in evidence, over objection, the .22 caliber pistol defendant had in his pocket which was not shown to have been used in connection with the crime charged.

In Morris v. State, 268 Ala. 60, 104 So.2d 810, the court held it was not error to admit in evidence a shotgun, not used in the killing, brought by defendant to the scene of the shooting. The court stated the gun was admissible to show defendant's purpose in going to the scene fully armed. We find no reversible error in admitting the pistol into evidence.

■ Officer DeMouy was asked on cross examination if he had a .357 Magnum bullet in his possession. When he answered yes, defense counsel asked to see it. Counsel then offered it in evidence with the statement:

"I am offering this so the jury will have it to feel the weight of it, and observe the size of it and compare it with a 22 caliber cartridge, which has been introduced in evidence, and judge the deadliness of the weapon in the possession of the deceased at the time he met his death. This is an unusual gun and an unusual bullet."

The state's objection to the introduction of the bullet was sustained.

The bullet sought to be introduced was a loaded one not taken from deceased's gun, but was borrowed from the policeman. According to the testimony the only .22 caliber cartridges introduced were the spent shells identified by the officers. Any comparison between the two cartridges was irrelevant. Moreover, Officer DeMouy had explained fully the differences between a Magnum pistol, .32, .38, .45 caliber pistols and a .22 caliber rifle. We find no reversible error in the court's refusal to admit the bullet in evidence.

Defendant's requested Charge 21 reads:

"If any individual Juror is not convinced of the Defendant's guilt, beyond all reasonable doubt and to a moral certainty, the Jury cannot convict."

This charge was fairly and substantially covered by this portion of the court's oral charge:

"You sometimes hear it said that if any Juror is not satisfied of the defendant's guilt beyond a reasonable doubt you can't convict him. And that's true because it must be a unanimous verdict, it must be a verdict of all twelve of you Jurors, * * *."

Baggett v. State, 33 Ala.App. 591, 35 So.2d 576.

The judgment is affirmed.

Affirmed.